UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------
                                                :
GILBERT WETHINGTON,             :     CASE NO. 5:06-CV-2472
                                                :
              Plaintiff,                  :     JUDGE JAMES S. GWIN
                                                :
vs.                                          :     ORDER & OPINION
                                                :     [Resolving Doc. 15]
REPUBLIC ENGINEERED PRODUCTS, :
INC.,                                       :
                                                :
              Defendant.              :
                                                :
-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

On October 13, 2006, *pro se* Plaintiff Gilbert Wethington ("Wethington") filed a Complaint alleging employment discrimination in violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.* [Doc. 1.] On May 25, 2007, Defendant Republic Engineered Products, Inc. ("Republic") filed a Motion for Summary Judgment, which the Plaintiff opposes. [Doc. 15.] For the reasons delineated below, the Court **GRANTS** Defendant's Motion for Summary Judgment.

**I. Background**

The Plaintiff worked for Republic's predecessor company from May 1988 until August 2002. [Doc. 15.] The Plaintiff was initially hired to work as a millwright in the 12-inch steel bar mill in Canton, Ohio (Pl. Dep. 39-40), but spent a portion of his time as a Maintenance Technician Mechanical ("MTM") (Pl. Dep. 58-60). In 1998, the Defendant's predecessor discontinued the

-1-

Case No. 5:06-CV-2472
Gwin, J.

plant's 12-inch bar mill and the Plaintiff assumed a full-time position as an MTM. *Id.* at 59-60. The Plaintiff maintained membership in the Local 1200 of the United Steelworkers of America ("USW") throughout his employment and worked under collective bargaining agreements with the Steelworkers. *Id.* at 40. During his tenure as an employee, the Plaintiff regularly worked at elevated levels from heights of four feet to four stories. *Id.* at 61-62, 57.

In August 2002, the Defendant's predecessor terminated the Plaintiff's position as part of a downsizing and reorganization effort. *Id.* at 63-64 The Defendant subsequently placed the Plaintiff on the United Steelworkers of America's preferential hiring list, which the Defendant utilized to fill job openings based upon seniority. *Id.* at 65-67.

In March 2002, Republic offered the Plaintiff an MTM position at the #4 melt shop, contingent upon successful completion of a medical examination. [Doc. 15.; Pl. Dep. 71-72.] The Plaintiff's medical examination included a review by an independent medical care provider, Aultworks, who sent the Plaintiff to a physical therapist, Paul Renner, for an examination. [Pl. Dep. 83-85.] Mr. Renner's report to Aultworks references the Plaintiff's "fear of heights" and specifically says that the Plaintiff "would have refuse[d] . . . to climb a ladder more than several steps up." [Doc. 17.]

As part of the physical examination process, the Plaintiff completed a medical history form that did not give any indication of acrophobia. [Doc. 15.] Rather, the Plaintiff affirmatively stated that he did not suffer from a "nervous condition" or "mental disturbance" and would not require any special consideration in job allocation. Aultworks subsequently certified the Plaintiff as medically qualified and the Plaintiff commenced employment with Republic. *Id.* Prior to initiating work at the Canton plant, a Republic manager advised the Plaintiff that climbing was a part of the MTM job.

-2-

Case No. 5:06-CV-2472
Gwin, J.

[Pl. Dep. 94-95.]  At no point in the hiring process did the Plaintiff tell Republic that he suffered from acrophobia, *Id.* at 107, although the Plaintiff contends that the Melt Shop Superintendent and other coworkers were aware of his condition, (Doc. 18; Pl. Dep. 93-94).

During the Plaintiff's first two weeks as a rehired MTM, he worked without incident at elevated levels.  [Pl. Dep. 112-113.]  On June 23, 2005, the Plaintiff performed maintenance on a furnace that required him to work from a railed catwalk approximately 25 feet above the ground. *Id.* at 117-18.  Melt Shop Superintendent John Lee ordered the Plaintiff to climb up a ladder to a dropout cylinder, located nine to ten feet above the catwalk. *Id.* at 121-22.  The Plaintiff refused and claimed that it was impossible for him to act in accordance with Lee's orders. *Id.* at 132-33.  The Plaintiff also expressed safety concerns over the lack of rails on the higher platform. *Id.* at 122-23.

On June 24, 2005, Republic provisionally discharged the Plaintiff for refusing to perform work assigned by the manager, in violation of plant rules.  [Doc. 15.]  The Plaintiff initiated formal grievances through USW.  Following a discussion with USW, the Defendant rescinded the Plaintiff's provisional discharge and returned the Plaintiff to the preferential hiring list to await a future job opportunity. *Id.*  The Plaintiff continued to pursue administrative grievances against Republic and USW and subsequently filed a formal grievance alleging "wrongful discharge." *Id.*  At the close of administrative hearings, which ended with the Defendant denying the Plaintiffs' grievance, the USW accepted Republic's solution of returning Plaintiff to the Preferential Hiring List, saying that it "could not dispute that [the Plaintiff] was unable to perform the full scope of MTM duties because of [his] fear of heights." *Id.*

On or about September 28, 2005, the Plaintiff filed an EEOC charge claiming that Republic's termination of his employment violated the ADA.  [Doc. 15.]  On July 10, 2006, the EEOC notified

Case No. 5:06-CV-2472
Gwin, J.

the Plaintiff that they were dismissing his charge for lack of sufficient evidence indicating unlawful discrimination in his dismissal. *Id.* On October 10, 2005, the Plaintiff filed a concurrent charge with the NLRB claiming dismissal because of his involvement in "protected union and concerted activities" and retaliation for previous charges filed with NLRB. [Pl. Dep. 160-61.] The NLRB also dismissed these charges. *Id.* The Plaintiff then filed the instant lawsuit alleging employment discrimination in violation of the ADA.

## II. Legal Standard

Summary judgment is appropriate where the evidence submitted shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case. *Waters v. City of Morristown*, 242 F.3d 353, 358 (6th Cir. 2001). A fact is material if its resolution will affect the outcome of the lawsuit. *Daughenbaugh v. City of Tiffin*, 150 F.3d 594, 597 (6th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The moving party meets its burden by "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). That burden may be discharged by pointing to an absence of evidence to support the nonmoving party's case. *Id.* at 325. However, the moving party is under no "express or implied" duty to "support its motion with affidavits or other similar materials *negating* the opponent's claim."

Case No. 5:06-CV-2472
Gwin, J.

*Id*. at 323.

Once the moving party satisfies its burden, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). It is not sufficient for the nonmoving party merely to show that there is some existence of doubt as to the material facts. *Id.* at 586. Nor can the nonmoving party "rest upon the mere allegations or denials of the adverse party's pleading." FED. R. CIV. P. 56(e).

In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party. *National Enters., Inc. v. Smith*, 114 F.3d 561, 563 (6th Cir. 1997). "The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial." *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987) (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968)); *see also Celotex*, 477 U.S. at 322. Ultimately the Court must decide "whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Terry Barr Sales Agency, Inc. v. All-Lock Co.*, 96 F.3d 174, 178 (6th Cir. 1996) (internal quotations omitted).

### III. Analysis

*Pro se* Plaintiff Wethington says the Defendant violated his rights under the ADA by dismissing him from his position as an MTM. It is unclear from the Plaintiff's complaint and deposition testimony whether the Plaintiff claims that Republic discriminated against him based upon a disability or discriminated against him by failing to accommodate his disability, both of which

-5-

Case No. 5:06-CV-2472
Gwin, J.

the ADA prohibits. The ADA proscribes employment discrimination "against a qualified individual with a disability because of the disability of such individual in regard to . . . discharge of employees." 42 U.S.C. § 12112(a). To establish a *prima facie* case of disability discrimination under the ADA, a plaintiff must prove that (1) he is disabled; (2) he is otherwise qualified for the position with or without reasonable accommodation; (3) defendant maintained an adverse employment action against him based on the disability; (4) his employer knew or had reason to know of his disability and (5) his position remained open. *Brenneman v. Medcentral Health System,* 366 F.3d 412, 417 (6th Cir. 2004) (citing *Hammon v. DHL Airways, Inc.,* 165 F.3d 441, 449 (6th Cir. 1999)).

To establish a prima facie case that an employer failed to accommodate an employee's disability, a plaintiff must offer evidence that (1) he is disabled; (2) the employer regarded him as such; (3) he is otherwise qualified to perform his job with or without reasonable accommodation; (4) he requested an accommodation; and (5) the employer failed to provide the necessary accommodation. *Dicarlo v. Potter,* 358 F.3d 408, 419 (6th Cir. 2004); *Myers v. Cuyahoga County,* 182 F. App'x. 510, 515 (6th Cir. 2006).

If a plaintiff makes out a *prima facie* case of discrimination, the burden of production shifts to the defendant to present a legitimate, nondiscriminatory reasons for the adverse employment action. *Brenneman,* 366 F.3d at 417. If the defendant carries that burden of production, the plaintiff then bears the burden of persuasion to demonstrate that defendant's proffered reasons were pretext for discrimination. *Id.* Throughout, however, the plaintiff always "retains the ultimate burden of persuasion." *Plant v. Morton Int'l, Inc.,* 212 F.3d 929, 936 (6th Cir. 2000).

Here, the Defendant says it is entitled to judgment as a matter of law because (1) the Plaintiff's claimed acrophobia is not a "disability" for the purposes of the ADA because the

-6-

Case No. 5:06-CV-2472
Gwin, J.

acrophobia did not substantially limit any major life activity and the Defendant never regarded the Plaintiff as "disabled"; (2) the Plaintiff is not a "qualified individual" for the purposes of the ADA because the Plaintiff could not perform essential functions of the MTM position; and (3) there is no evidence to support an assertion that Republic subjected the Plaintiff to an adverse employment action. [Doc. 15.]

*A. "Disabled Person" Under the ADA*

To be disabled under the ADA, a plaintiff must "(1) have a physical or mental impairment that substantially limits one or more of the major life activities of such persons; (2) have a record of such impairment; or (3) be regarded as having such an impairment." 42 U.S.C. § 12102(2). Major life activities are "activities that are of central importance to daily life." *Toyota Motor Mfg. Co. v. Williams,* 534 U.S. 184, 196 (2002). In contrast, an impairment that "only moderately or intermittently prevents an individual from performing major life activities is not a substantial limitation under the Act." *Mahon v. Crowell,* 295 F.3d 585, 590-91 (6th Cir. 2002).

Where the activity affected by a purported disability involves employment, a plaintiff must show they are "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable skills and abilities." 29 C.F.R. § 1630.2(j)(3)(I); *Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 491 (1999). Accordingly, "the inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." 29 C.F.R. § 1630.2(j)(3)(I). Indeed, "if jobs utilizing an individual's skills . . . are available, one is not precluded from a substantial class of jobs. Similarly, if a host of different jobs are available, one is not precluded from a broad range of jobs." *Sutton,* 527 U.S. at 492.

Case No. 5:06-CV-2472
Gwin, J.

Alternatively, a plaintiff can establish "disability" under the ADA by demonstrating that they were "regarded as having . . . an impairment" by a covered entity, such as an employer. 42 U.S.C. § 12102(2); *Sutton,* 527 U.S. at 489. To make such a showing, a plaintiff must demonstrate that: "(1) a covered entity mistakenly believes that . . . [they have] a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities." *Sutton,* 527 U.S. at 489; *see also* 29 C.F.R § 1630.2(l). Through this provision, the ADA encompasses cases in which "myths fears and stereotypes affect the employer's treatment of an individual." *Plant,* 212 F.3d at 938. In this case, the Court finds that the Plaintiff has failed to provide evidence showing either that his alleged acrophobia is a disability under the ADA or that the Defendant considered him disabled.

*1. Acrophobia Is Not A Disability*

The Defendant argues that the Plaintiff's claimed acrophobia is not a "disability" under the ADA because the Plaintiff's condition did not substantially limit any major life activity. [Doc. 15.] The Court agrees. First, there is no case law to support the Plaintiff's position that acrophobia is a "disability" for the purposes of the ADA. To the contrary, the few cases that have confronted this question have unanimously held that a plaintiff's acrophobia was not a "disability" as a matter of law. *Forrisi v. Bowen,* 794 F.2d 931 (4th Cir. 1986); *Lindenau v. Wortz Co.,* 2000 WL 1199071 (10th Cir. Aug. 23, 2000).

More importantly, the Plaintiff offers no evidence to support a finding that his acrophobia limits one or more major life activities. During his deposition, the Plaintiff admitted that his acrophobia did not impair his ability to engage in any major life activity. [Pl. Dep. 26-27.] For example, the Plaintiff volunteered that his acrophobia did not prevent him from either climbing 15

-8-

Case No. 5:06-CV-2472
Gwin, J.

feet to clean his gutters, *Id.* at 24-27, or prohibit him from climbing a 35-foot ladder to the top of a lighthouse, *Id.* at 166-67. Furthermore, the Plaintiff has never sought treatment or counseling for his alleged acrophobia, *Id.* at 11, and does not provide any evidence of a single incident in which his acrophobia prevented him from engaging in a major life activity, outside of the task at issue in this case.

Similarly, in reference to work-related activities, the Plaintiff admits he has never suffered physical or emotional problems that would substantially limit his ability to work. *Id.* at 36-37. In fact, in previous positions with the Defendant's predecessor, the Plaintiff routinely worked at elevated levels, including on the highest piece of equipment in the melt shop, some four stories above the ground. *Id.* at 57. Indeed, during the Plaintiff's two-week tenure with Republic leading up to his provisional discharge, the Plaintiff exhibited no problems when working on a catwalk 25-feet above the ground. *Id.* at 118-19. It was only when the Defendant ordered the Plaintiff to climb to a height five-feet higher than he had previously ventured, that his acrophobia suddenly became an issue. Accordingly, the scope of the Plaintiff's fears is apparently *very* specific.

The Plaintiff also fails to explain how his alleged disability precluded him from a class of jobs or a broad range of jobs. The record shows that the Plaintiff's alleged acrophobia was limited to a singular component of a job and that his condition only precluded him from performing one type of job under a narrow set of conditions. [Pl. Dep. 120-23. ]. Such a narrow limitation fails to constitute a disability under the ADA. 29 C.F.R. § 1630.2(j)(3)(I). Moreover, a plaintiff may not rely solely on his physician's medical diagnosis to prove the existence of an impairment. "It is insufficient for individual's attempting to prove disability status . . . to merely submit evidence of a medical diagnosis of an impairment. Instead, the ADA requires those 'claiming the Act's protection . . . to

Case No. 5:06-CV-2472
Gwin, J.

prove disability by offering evidence that the extent of the limitation [caused by their impairment] in terms of their own experience . . . is substantial.'" *Toyota Motor Mfg. Co.,* 534 U.S. at 691-92 (quoting *Albertson's Inc.v. Kirkingburg,* 527 U.S. 555, 567 (1999)).

Here, the Plaintiff offers nothing more than a bare assertion that he suffers from acrophobia. [Doc. 1.]. No evidence establishes that the extent of his limitations are substantial. If anything, the evidence supports the proposition that the Plaintiff's acrophobia was rather limited in scope. Accordingly, the Plaintiff has failed to raise a genuine issue of material as to whether his alleged acrophobia is a "disability" under the ADA.

*2. The Defendant Did Not Regard the Plaintiff as Disabled*

Although the Plaintiff's acrophobia did not constitute a disability under the ADA, the Plaintiff nonetheless would qualify as a "disabled person" if the Defendant regarded him as disabled. 42 U.S.C. § 12102(2). However, the record does not reflect that the Defendant regarded the Plaintiff as disabled at the time they terminated him. To the contrary, the Plaintiff's unrestricted medical qualifications indicate that the Defendant considered the Plaintiff perfectly healthy and capable of performing all MTM job functions.

At best, some residual factual dispute exists regarding whether the Defendant was aware of the Plaintiff's acrophobia. However, there is no indication that Defendant considered Plaintiff's fear of heights as a substantial impairment of a major life activity. In fact, the Plaintiff testified that he sedulously tried to preclude the Defendant from reaching such a conclusion by keeping his acrophobia "covered" from the Defendant. [Pl. Dep. 17.] Accordingly, the Court finds that, as a matter of law, the Plaintiff does not constitute a "disabled person."

B. *"Qualified Individual" Under the ADA*

Case No. 5:06-CV-2472
Gwin, J.

Even if the Plaintiff is "disabled" for the purposes of the ADA, in order to establish a prima facie case of employment discrimination, a plaintiff must demonstrate that he could perform all of the "essential functions" of the position at issue with or without reasonable accommodation. 42 U.S.C. § 12111(8).; *Macy v. Hopkins County School Bd. of Educ.,* 484 F.3d 357, 363 (6th Cir. 2007). "Essential functions" refers to non-marginal, fundamental duties performed in employment. 29 C.F.R. § 1630.2(n)(1); *Smith v. Henderson,* 376 F.3d 529, 536 (6th Cir. 2004).

The Defendant argues that summary judgment is proper, even if the Plaintiff is "disabled," because the Plaintiff could not perform essential functions of the MTM position. Specifically, the Defendants says the Plaintiff was informed prior to commencing employment that the job entailed climbing and there is no dispute among the parties that climbing and working at elevated heights is an integral part of the MTM position. [Pl. Dep. 147; Doc. 15.] In refusing to perform the directive ~~repeatedly~~ assigned by his supervisor, the Defendant argues that the Plaintiff effectively admitted that he could not successfully perform certain essential MTM job functions. Consequently, the Defendant says that the Plaintiff is not a "qualified individual" under the ADA because he could not perform the essential function of the MTM position with or without reasonable accommodation.

Although the Court agrees that the Defendant is entitled to summary judgment because the Plaintiff is not "disabled" under the ADA, the Court disagrees that no genuine issue of material fact exists regarding whether the Defendant could have made reasonable accommodations for the Plaintiff's alleged disability. A reasonable accommodation includes "[m]odifications or adjustments to the work environment, . . . [j]ob restructuring . . . [and] modification of equipment or devices." 29 C.F.R. § 1630.2(o). Here, the Plaintiff claims, in both his complaint and deposition, that if safety rails "were on [the platform] I might be able to go up there." [Doc. 1.] At the very least, a

-11-

Case No. 5:06-CV-2472
Gwin, J.

genuine issue of material fact exists regarding whether such a limited accommodation might have allowed the Plaintiff to perform the essential functions of an MTM.

C. *Adverse Action*

The Plaintiff fails to show that he was disabled or considered to be disabled. Even if he had been able to make such a showing, his claims do not succeed. He does not offer sufficient evidence to establish a *prima facie* case. If a plaintiff has otherwise made a *prima facie* case of discrimination, he must demonstrate that the proffered reason for his provisional discharge was a pretext for discrimination. *See Brenneman,* 366 F.3d at 417. A plaintiff can refute an employer's legitimate, non-discriminatory justification by showing that the proffered reason either (1) has no basis in fact; (2) did not actually motivate the decision; or (3) is insufficient to warrant the decision. *Johnson v. Kroger Co.,* 319 F.3d 858, 866 (6th Cir. 2003).

The Defendant maintains that there is no evidence that Republic subjected the Plaintiff to an adverse employment action. Republic's stated reason for discharging the Plaintiff was his failure to comply with a manager's direct order to perform a work assignment. [Doc. 15.] The Plaintiff's actions constituted a violation of a work rule and provided a nondiscriminatory basis for employee discharge under Republic policy. The Plaintiff has not offered any evidence that shows a different motivation for the Defendant's decision. Moreover, no evidence suggests that the Defendant's stated reason for the Plaintiff's dismissal was unwarranted, given that the employee handbook conspicuously states that an "employee who violates any of the [handbook] rules shall be subject to disciplinary action, up to and including discharge." [Doc. 15.]

Ultimately, the Plaintiff has failed to refute the Defendant's assertion that non-compliance formed the basis for his provisional discharge. Further, the Plaintiff provides no evidence to suggest

-12-

Case No. 5:06-CV-2472
Gwin, J.

that his dismissal resulted from hostility directed towards his real or perceived disability. As such, the Court finds that the Plaintiff cannot establish that his discharge constituted an adverse or pretextual employment action.

### IV. Conclusion

For the aforementioned reasons, the Court finds that the Plaintiff has failed to establish a *prima facie* case of disability discrimination under the ADA. Accordingly, the Court hereby **GRANTS** the Defendant's Motion for Summary Judgment.

IT IS SO ORDERED.

Dated: June 21, 2007                               s/     *James S. Gwin*
                                                   JAMES S. GWIN
                                                   UNITED STATES DISTRICT JUDGE